UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:22-CR-12-GFVT-MAS-1 |
| v. ) | |
| ) | |
| NICHOLAS IAN FLANAGAN, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Nicholas Flanagan ("Flanagan") conspired to distribute heroin and 40 grams or more of fentanyl in violation 21 U.S.C. § 846, possessed with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1), possessed with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), and possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). [DE 1].

The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(C) and (E) [DE 15], and the Court conducted a detention hearing on September 23, 2022. [DE 21]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

I. **BRA FRAMEWORK**

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some

1

evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be

2

effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II.   ANALYSIS

Flanagan rebutted the presumption as to both risk of nonappearance and risk of danger. However, the United States met its burden on both issues. Namely, the United States showed by a preponderance of the evidence that no combination of conditions can reasonably assure that Flanagan will appear at the proceedings in this case. It also established by clear and convincing evidence that no conditions can reasonably assure community safety. As such, the Court grants the United States' motion for detention.

### A.   RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Flanagan put forth sufficient evidence to overcome the presumption as to risk of nonappearance. Specifically, Flanagan asserted by proffer that he is willing to address his drug use issues and will submit to drug monitoring as a release condition. He also asserted that, if released, he would reside with his mother at her home near Seattle, Washington. Moreover, Flanagan explained that his failure to appear for criminal proceedings related to a firearm charge in Seattle in April of 2022, which was noted in the Pretrial Services Report ["PSR"] prepared by the United States Probation Office ("USPO"), was due to a

3

simple mistake on his part as opposed to an intentional act to avoid court. These facts are sufficient to overcome the light presumption burden. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (discussing that the presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk).

In response, the United States presented evidence by proffer and explanatory testimony of Shelbyville Police Department Detective Joseph Puleo ("Puleo") and United States Probation Officer Brian Rains ("Rains") to demonstrate Flanagan's risk of both nonappearance and danger. The record and hearing testimony demonstrate that Flanagan does not presently have a strong tie to any community. *See* 18 U.S.C. § 3142(g)(3)(A) (directing courts to consider the defendant's "length of residence in the community" and "community ties" in determining the issue of release). Flanagan's PSR states that he has been unemployed since March of 2022, and Puleo's testimony indicated that Flanagan and his codefendant, Trish Anderson ("Anderson"), were traveling across the country without a firm destination at the time of their arrest in May of 2022. Specifically, Puleo testified that Flanagan had obtained 2,500 pressed fentanyl pills in Washington with plans to sell the pills to a buyer in Sheboygan, Wisconsin. However, Flanagan's deal with the Sheboygan buyer fell through, so he instead intended to travel to an unknown destination in the Southern United States to sell the pills, stopping at various National Parks along the way. Moreover, the PSR indicates that Flanagan does not presently have a residence. And although Flanagan proffered that he could reside with his mother if release, Rains testified that Flanagan's mother had not responded to his attempt to contact her to verify those plans.

In addition, Flanagan's drug-trafficking charges themselves indicate a risk of flight or nonappearance. *See United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1

4

(E.D. Tenn. June 5, 2013) (citing *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee)).  Flanagan faces a lengthy sentence if convicted of either his drug-trafficking or firearm charges. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee").  And, finally, Flanagan has a recent, significant history of substance use, having a habit of using methamphetamine daily at the time of his May 2022 arrest. *See U.S. v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'") (citing The Federal Bail and Detention Handbook and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)).

Relevant to the risk of nonappearance, the United States noted that Flanagan has a significant history of drug use, is not currently employed, has no verifiable employment history, and his assertion that he could stay at his mother's residence if released could not be verified by the USPO.  Additionally, the United States noted that Flanagan was arrested in Kentucky shortly after a warrant for his arrest was issued in Seattle for failing to appear for a court proceeding.

On balance, the Court concludes the United States has proved by a preponderance of evidence that Flanagan presents a serious risk of nonappearance if released pending trial.  Having found that the United States demonstrated that Flanagan poses a risk of nonappearance, the Court also finds that no combination of conditions can sufficiently mitigate that risk.  Flanagan's daily habit of substance use during the time in which he was arrested creates a risk of nonappearance that the Court cannot ignore, even accepting as true Flanagan's uncorroborated assertion that he could reside with his mother in Seattle if released.  As such, the Court finds by a preponderance

of the evidence that no condition or combination of conditions can reasonably assure the Court that Flanagan will appear as required. As such, the BRA mandates detention based on the risk of nonappearance.

**B.     RISK OF DANGER**

Though the Court finds pretrial detention is warranted based on Flanagan's risk of nonappearance, the Court will analyze danger-based detention in the interest of completeness. Flanagan overcame the presumption of detention as to danger risk by asserting by proffer that he is sincerely willing to address his substance use issues through treatment. Flanagan noted that the PSR reflects that his serious criminal charges occurred during periods in which he was using narcotics and not during the fourteen-year period in which he remained sober. Further, Flanagan asserted that he would submit to stringent electronic monitoring and drug testing conditions if released, which would further work to prevent him from using drugs.

The Court finds, however, that the United States has successfully shown by clear and convincing evidence that Flanagan's risk of danger proves an independent basis for pretrial detention under the BRA.

  **1.     Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The nature and circumstances of Flanagan's current offenses—conspiracy to distribute and possession with intent to distribute heroin and fentanyl and possession of two firearms in furtherance of those crimes—strongly favors detention.

The nature and circumstances of Flanagan's charged crimes are serious and indicate a high risk of dangerousness. Flanagan was arrested after a search of his vehicle uncovered approximately 1,500 pressed fentanyl pills disguised as 30 mg Percocet pills, 2.6 ounces of heroin,

6

9.5 grams of methamphetamine, and two firearms. Possession with intent to distribute heroin and fentanyl is an exceptionally dangerous offense that poses a serious risk of harm to the community. *Stone.*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence . . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). And as noted, the detention presumption stemming from that charge does not vanish, even where, as here, the defendant overcomes the initial presumption that he poses a danger to society. *Stone*, 608 F.3d at 945.

Moreover, the large quantity of drugs found in Flanagan's possession at the time of his arrest further increases the risk of danger to the community his release would pose. Indeed, Puleo testified that the seizure of Flanagan's narcotics was the largest drug seizure in Shelby County, Kentucky in the last year. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases). Likewise, Flanagan's possession of a firearm while engaged in alleged drug trafficking increases the risk of danger to the community. *See United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation" would only increase it).

Flanagan's charges and the circumstances surrounding his alleged crimes indicate a high risk of danger to the community, so this factor weighs heavily towards detention.

7

### 2. **Weight of the Dangerousness Evidence**

The second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

The weight of evidence against Flanagan relevant to danger firmly favors detention. At the detention hearing, Puleo explained that Flanagan and Anderson were in the process of trafficking a large amount of extremely dangerous pressed fentanyl pills at the time of their arrest. In May of 2022, Puleo and other officers responded to reports that Flanagan and Anderson were sleeping in their vehicle at a gas station in Shelbyville, Kentucky. Officers searched the vehicle after spotting drug paraphernalia inside of it and discovered several safes secured to the interior of the vehicle. As noted above, officers uncovered approximately 1,500 pressed fentanyl pills disguised as 30 mg Percocet pills, 2.6 ounces of heroin, and 9.5 grams of methamphetamine inside the safes. Officers also found one firearm in the passenger-side floorboard and another in a backpack in the rear of the vehicle. Flanagan eventually told Puleo that he originally purchased 2,500 pressed fentanyl pills in Washington with the intent to sell the pills to a buyer in Sheboygan, Wisconsin. However, the deal with the buyer fell through, so Flanagan, accompanied by Anderson, began travelling toward the Southern United States, where the person who sold Flanagan the narcotics had lined up a buyer. By the time Flanagan was arrested in Kentucky, he and Anderson had either used or sold approximately 1,000 of the pressed fentanyl pills. Moreover, Puleo testified that the nature of the narcotics found in Flanagan's possession was uniquely

8

dangerous. Puleo stated that pressed fentanyl pills disguised as Percocet were responsible for many overdoses in the area in which he operates.

In sum, Puleo presented evidence that Flanagan was in the process of trafficking a large quantity of extremely dangerous narcotics at the time of his arrest. This factual backdrop indicates that the weight of evidence against Flanagan relevant to danger is great, so this second factor weighs heavily in favor of detention.

### 3.     History and Characteristics

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Setting the current charges aside, Flanagan's PSR reflects two theft charges, an assault charge, and a harassment charge, although those charges occurred more than fourteen years ago. Such a history only somewhat indicates that Flanagan would pose a risk of dangerousness to the community if released. That said, however, the Court cannot ignore the hearing testimony that Flanagan appears to have trafficked a number of highly dangerous fentanyl pills during the time leading up to his current arrest. As such, the third factor weighs only slightly in favor of detention based on risk of danger.

### 4.     Nature and Seriousness of the Danger Risk

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In this case,

this factor overlaps with consideration of the second BRA factor, the weight of the evidence against Flanagan indicating danger.

As the Court discussed in its analysis of the second BRA factor, the risk of danger posed to the community by Flanagan's release is significant, especially considering the large quantity of drugs found in Flanagan's possession, the uniquely dangerous nature of those drugs, and the fact that the drugs were accompanied by two firearms. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).  But even assuming the risk that Flanagan will continue to traffic narcotics while on release is low, the potential consequences of his doing so could be devastating to the community.  Puleo testified pills similar to those found in Flanagan's possession frequently cause overdoses in the community in which Flanagan was arrested.

The nature and seriousness of the risk of danger to the community posed by releasing Flanagan is simply too great, and this final factor tips decidedly in favor of detention.

### 5. <u>Availability of Conditions Addressing Danger Risk</u>

Finally, for the reasons discussed, the Court finds that Flanagan presents a risk of danger to the community if released based primarily on his significant involvement with narcotics and firearms.  While Flanagan asserts that any risk of danger can be sufficiently mitigated by release conditions such as electronic monitoring, drug testing, and treatment, the Court is unconvinced that any combination of available conditions would reasonably quell the risk of danger to the community Flanagan's risk would pose.  This is especially true given the nature of Flanagan's charged drug-trafficking crimes, which permits stationary involvement and discrete activity. *See,*

10

*e.g.*, *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home). The risk that Flanagan could simply continue to engage in drug trafficking from his residence if released is further exacerbated by the lack of information available to the Court concerning Flanagan's planned release location.

Accordingly, the Court finds that the United States has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or the community. Detention is independently warranted based on Flanagan's risk of danger to the community.

### III.   CONCLUSION

In sum, the Court finds that the United States proved by a preponderance of the evidence that Flanagan is an irremediable nonappearance risk and proved by clear and convincing evidence that he poses a danger to the community that cannot be mitigated with conditions. Therefore, the BRA mandates that Flanagan remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 3rd day of October, 2022.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY